UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-11978-RGS

NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA

v.

TOWN OF NORWOOD ET AL.

MEMORANDUM AND ORDER ON
CROSS MOTIONS FOR SUMMARY JUDGMENT

July 26, 2017

STEARNS, D.J.

This is a dispute over an insurance company's duty to defend its insured in a lawsuit alleging, *inter alia*, retaliation by the insured against a third party for the exercise of First Amendment rights. Plaintiff National Union Fire Insurance Company of Pittsburgh, PA, denied having a duty to defend, but agreed to provide a defense for the Town of Norwood and affiliated defendants[1] (collectively "Norwood") in a lawsuit brought by Boston Executive Helicopters, LLC (BEH), under a reservation of rights.

---

[1] The defendants are the Town of Norwood, Norwood Memorial Airport, the Norwood Airport Commission (NAC), Francis T. Maguire, Mark P. Ryan, Kevin J. Shaughnessy, Martin E. Odstrchel, Michael Sheehan, Leslie W. LeBlanc, and Thomas J. Wynne (all current or former Commission members or employees of the Airport or NAC). National Union also named as a defendant Boston Executive Helicopters, LLC (BEH), the plaintiff in the underlying suit.

This court eventually dismissed all but one of BEH's claims – that Norwood allegedly retaliated against BEH in violation of 42 U.S.C. § 1983. *See Boston Exec. Helicopters v. Maguire*, 196 F. Supp. 3d 134 (D. Mass. 2016).

In this action, National Union seeks a declaration pursuant to 28 U.S.C. § 2201 that under the policy it owes no duty to defend or indemnify Norwood against the retaliation claim. Norwood filed a cross-motion for summary judgment.[2] *See* Fed. R. Civ. P. 56. A hearing on the motions was held on July 6, 2017.

## BACKGROUND

BEH has held a commercial permit (the Part 135 Permit) to operate a helicopter flight service at the Norwood Airport since 2010. BEH Am. Compl. ¶ 49. Conflicts that culminated in the underlying lawsuit between Norwood and BEH began in 2011 when BEH attempted to expand its business by applying for a permit to become a fixed base operator (FBO). *Id.* ¶¶ 2, 55. The NAC required an FBO applicant to make a substantial capital investment at the Airport as a ticket of admission. To satisfy that requirement, BEH leased a 30,000 square foot plot on which it built a new hangar and fuel farm facility. *Id.* ¶ 53-59. Disputes arose when the NAC refused to provide BEH with necessary ramp space, which BEH perceived as

---

[2] Norwood has also counterclaimed for attorneys' fees.

favoring the Airport's sole existing FBO, FlightLevel Norwood, LLC. *Id.* ¶ 64. BEH served public records requests on Norwood regarding the decision to deny it the ramp space and subsequently petitioned for a court order to compel Norwood to comply with the requests. *Id.* ¶ 70-71. On June 5, 2014, BEH filed a formal complaint with the Federal Aviation Administration (FAA). *Id.* ¶ 75.

On June 11, 2014, the NAC voted to table discussion of BEH's FBO permit application. *Id.* ¶ 222. On October 26, 2015, BEH filed a twelve-count complaint against Norwood, alleging that the NAC had colluded with FlightLevel to stifle competition at the Airport. The original complaint has since been whittled down to one surviving claim – an allegation that Norwood unlawfully retaliated against BEH in violation of the First Amendment.

In analyzing the First Amendment claim in *Boston Executive Helicopters*, this court held that BEH's allegations that: (1) the NAC had tabled consideration of BEH's application for an FBO permit in response to its filing a complaint with the FAA; (2) the NAC had refused to issue the FBO permit, in part, because BEH publicly litigated the dispute in the press; and (3) the NAC had denied hearings on BEH's FBO permit application in retaliation for BEH filing a public records dispute, when considered

3

collectively, made out a plausible claim of First Amendment retaliation. 196 F. Supp. 3d at 144-145.

At all relevant times, Norwood held two identical Aviation Commercial General Liability (CGL) Policies with National Union. Under the CGL Policies, National Union undertook the defense against BEH's claims under a reservation of rights. National Union now seeks a declaration from the court that under the CGL Policies it owes no duty to defend Norwood against the remaining retaliation claim. The sole issue is whether the surviving claim falls within the scope of the CGL Policies' coverage.

The CGL Policies require National Union to defend and indemnify Norwood for damages incurred arising from any "suit" resulting from "personal and advertising injury," subject to various exclusions. The operative exclusion for present purposes is the exclusion from coverage of "knowing" violations on the part of the insured, including "'[p]ersonal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" Dkt #1-2 at 7.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, the discovery and disclosure materials on file, and any affidavits, "the

4

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  "A genuine issue is one that could be resolved in favor of either party, and a material fact is one that has the potential of affecting the outcome of the case."  *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004).  "[W]ith cross-motions for summary judgment, we 'must view each motion, separately,' in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor."  *OneBeacon Am. Ins. Co. v. Commercial Union Assur. Co. of Canada,* 684 F.3d 237, 241 (1st Cir. 2012) (quoting *Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010)).

Massachusetts law, which controls in this case, provides that if the allegations in the third-party complaint against the insured are "'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense."  *Utica Mut. Ins. Co. v. Herbert H. Landy Ins. Agency, Inc.*, 820 F.3d 36, 41 (1st Cir. 2016) (quoting *Metro. Prop. & Cas. Ins. Co. v. Morrison*, 460 Mass. 352, 357 (2011)).  "In order for the duty of defense to arise, the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage.  There is no requirement that the

facts alleged in the complaint specifically and unequivocally make out a claim within the coverage." *Sterilite Corp. v. Continental Cas. Co.*, 18 Mass. App. Ct. 316, 319 (1983). Moreover, where an insurer is obligated to defend the insured on one of the counts alleged against it, the common law "in for one, in for all" doctrine requires the insurer to mount a defense on all counts, including those that are not covered. *Mount Vernon Fire Ins. Co. v. Visionaid, Inc.*, 477 Mass. 343, 347-348 (2017). By contrast, where the allegations in the underlying complaint "lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty" to defend. *Terrio v. McDonough,* 16 Mass. App. Ct. 163, 168 (1983); *see also Metro. Prop. & Cas. Ins. Co. v. Fitchburg Mut. Ins. Co.*, 58 Mass. App. Ct. 818, 820 (2003).

The apparent tension between these two bedrock propositions of insurance law raises the question of whether the general duty to defend under the "in for one, in for all" doctrine requires an insurer to continue the defense at the point the only remaining claim against the insured falls within an exclusion from the policy. The answer is found in the venerable *Sterilite* decision: "When, as in the present case, the allegations of the third-party complaint find apparent lodgment in the effective coverage of the policy, the insurer is obligated to defend. But it can, by certain steps, get clear of the

duty from and after the time when it demonstrates with conclusive effect on the third party that as matter of fact – as distinguished from the appearances of the complaint and policy – the third party cannot establish a claim within the insurance." *Sterilite Corp.*, 17 Mass. App. Ct. at 323. In other words, under *Sterilite,* the insurer is permitted to withdraw the defense when only "counts falling directly within the policy exclusions remain[]." *Conway Chevrolet-Buick, Inc. v. Travelers Indem. Co.*, 136 F.3d 210, 214 (1st Cir. 1998). National Union argues that the CGL Policies' exclusion for knowing violations extinguishes any conceivable remaining coverage.

But there is one more bedrock proposition at play. Policy "[exclusions] are strictly construed against the insurer." *Camp Dresser & McKee, Inc. v. Home Ins. Co.*, 30 Mass. App. Ct 318, 323-324 (1991). Norwood argues that for the knowing violations exclusion to apply, it must have not only intended the retaliatory acts, but also to have intended any resulting harm. Norwood is correct that Massachusetts courts have interpreted the policy exclusion for knowing violations as applying to the intentional and knowing infliction of injury, and not to injury resulting from reckless or negligent behavior. *Norfolk & Dedham Mut. Fire Ins. Co. v. Cleary Consultants*, *Inc.* 81 Mass. App. Ct. 40, 41 (2011). For example, in *Norfolk*, the underlying claim of sexual harassment remained outside the scope of the exclusion because the

7

defendant's offensive conduct "f[e]ll well within the range of reckless misconduct." *Id.* at 53. Norwood asserts that whether it intended to injure BEH is still in dispute in the underlying litigation. And because the insurer's duty to defend is independent from, and broader than, its duty to indemnify, *Morrison,* 460 Mass. at 357, Norwood argues that until the facts are conclusively established, National Union must provide a defense.

But the weakness in Norwood's argument is this: while I can easily imagine an intentional act undertaken without any intent to cause injury, retaliation is not one of those imaginings. A desire to punish fuels retaliatory conduct. *See Retaliation*, Oxford English Dictionary (3d ed. 2010), *available at* http://www.oed.com/view/Entry/164169 (defining retaliation as "[r]epayment (in kind) for injury or insult; reprisal, revenge; retribution"). Because the conduct covered by a First Amendment retaliation claim is inherently willful, it requires intentionality and the deliberate infliction of injury. *See, e.g., Collins v. Nuzzo*, 244 F.3d 246, 251-252, 251 n.2 (1st Cir. 2001) ("intent to retaliate" for First Amendment activities must be a "substantial factor" motivating the challenged action). It therefore falls within the policy's knowing violations exclusion, relieving National Union of its duty to defend.

8

ORDER

For the foregoing reasons, it is <u>ADJUDGED</u> and <u>DECLARED</u> that National Union is relieved of its duty to defend Norwood against the retaliation claim, the court having determined the CGL Policy exclusion for knowing violations unambiguously extinguishes any remaining coverage. Norwood's cross-motion for summary judgment is <u>DENIED</u>.

       SO ORDERED.

       <u>/s/ Richard G. Stearns  </u>
       UNITED STATES DISTRICT JUDGE